JL

WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

James Sanchez,

Plaintiff,

v.

Ryan Thornell, et al.,

Defendants.

No. CV-26-07318-PHX-JAT (DMF)

**ORDER**

Plaintiff James Sanchez, who is confined in the Arizona State Prison Complex (ASPC)-Lewis and is represented by counsel, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and paid the filing and administrative fees. The Court will dismiss the Complaint with leave to amend.

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

The Court will dismiss Plaintiff's Complaint for failure to state a claim, but because it may possibly be amended to state a claim, the Court will dismiss it with leave to amend.

## II. Complaint

In his three-count Complaint, Plaintiff sues Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) Director Ryan Thornell; ASPC-Lewis Complex Warden John Mattos; Deputy Wardens Lee and Cameron; Lieutenant Gonzales; and Correctional Officers Torres, Lynch, and Rosales. (Doc. 1 ¶¶ 4-11.) Plaintiff brings claims regarding his conditions of confinement and alleges that Defendants failed to protect him from assault by other prisoners. He seeks compensatory and punitive damages, pre-judgment interest, and his costs and attorney's fees for this case. (*Id.* at 12-13.)

Plaintiff alleges the following:

On March 5, 2024, Plaintiff submitted a letter regarding the ongoing violence and conditions at Rast Unit. (*Id.* ¶ 14.) Defendants and ADCRR administrators "also were aware" that Plaintiff had renounced his prior gang affiliation, which made him a target for violent assaults by other prisoners. (*Id.* ¶ 15.) Despite Plaintiff's written warning to

ADCRR employees and administrators, Defendants failed to move Plaintiff to another facility where he would not be exposed to targeted attacks by other prisoners. (*Id.* ¶ 16.)

On October 7, 2024, Plaintiff was in the recreation yard when four to seven high-level custody prisoners assaulted him, hitting him in the head with a pair of hair clippers, which were allegedly given to the prisoners by ADCRR employees. (*Id.* ¶ 17.) Several officers intervened in the attack. (*Id.* ¶ 18.)

After the October 7, 2024, attack Plaintiff was sent back to the same pod and unit. (*Id.* ¶ 20.) On October 8, 2024, five to eight prisoners—some of whom had attacked Plaintiff the day before—attempted to attack Plaintiff as he walked to the dining hall. (*Id.*) A corrections officer intervened with tear gas and a taser. (*Id.*) That day, Plaintiff was taken to the Intake Movement Office (IMO) and was told to do an inventory of his property in preparation for transfer. (*Id.* ¶ 22.)

Early in the morning of October 9, 2024, a prisoner—whom Defendants Cameron, Gonzales, and Rosales had identified as the leader of the prison gang whose members had been targeting and assaulting Plaintiff—was brought to the IMO, where Plaintiff was located. (*Id.* ¶ 23.) The prisoner "was allowed to walk into the IMO through an unlocked security door, without any restrictions or control of his movement" and attacked Plaintiff because prison staff allowed him unrestricted freedom to gain access to Plaintiff. (*Id.* ¶¶ 24-25.)

Plaintiff again was returned to the same pod and unit. (*Id.* ¶ 27.) On October 16, 2024, Plaintiff submitted a complaint to Defendants Lee and Lynch because he had been improperly classified as "Refuse to House" (RTH) and was being placed at ASPC-Lewis Bachman Unit. (*Id.* ¶ 28.) Plaintiff stated in the complaint that his previous assignment to a level 4 close-custody unit at the Rast facility was incorrect because he was eligible for a level 3 assignment. (*Id.* ¶ 29.) Plaintiff recounted that while he was housed at Rast Unit, he was assaulted by other prisoners who were members of a prison gang. (*Id.* ¶ 30.)

On October 27, 2024, Plaintiff sent a letter to Arizona Governor Katie Hobbs, District Judge Roslyn Silver, and Defendant Thornell requesting investigation and

corrective action regarding the ongoing violence and corruption at ADCRR. (*Id.* ¶ 31.) On October 30, 2024, Defendant Mattos wrote Plaintiff a response "acknowledging" that Plaintiff was a "victim of multiple assaults at the Rast Unit" and advising Plaintiff that he would soon be returned to the Rast Unit. (*Id.* ¶ 32.)

On November 5, 2024, Plaintiff submitted another inmate grievance stating that the responses he received did not resolve his initial complaint regarding his classification and assigned unit. (*Id.* ¶ 33.) Plaintiff again complained that while he assigned to the Rast Unit, he had been assaulted by other prisoners and then was returned to the same pod after recovering from the assaults. (*Id.* ¶ 34.)

On November 11, 2024, Plaintiff sent a letter to Defendant Thornell, requesting a review of the ongoing issues at the Lewis complex including safety and security and the emergence of prison gangs in the protective custody units. (*Id.* ¶ 35.) The letter also "advised" that Defendant Mattos was aware that Plaintiff had been the victim of assaults and that he still was returned to the same unit. (*Id.* ¶ 36.)

On December 1, 2024, Plaintiff submitted a grievance appeal advising that previous informal requests and grievances had been ignored. (*Id.* ¶ 37.) Plaintiff stated in the appeal that Defendants Torres and Lee had told Plaintiff that he would be returned to the Rast Unit, although Plaintiff had advised them that "based on [his] issues, [he would] be put in danger." (*Id.* ¶ 38.) On December 12, 2024, Plaintiff was sitting in his cell when he was hit over the head with an object and knocked unconscious. (*Id.* ¶ 39.)

Plaintiff alleges that Defendants violated his Eighth Amendment rights with respect to the assaults he suffered. Count One is based on the October 7, 2024 attack; Count Two is based on the October 9, 2024 attack; and Count Three is based on the December 12, 2024 attack.

## III. Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir.

2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

To maintain a claim under § 1983 against an individual defendant, a plaintiff must demonstrate personal participation in the alleged constitutional violation by that defendant. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Where multiple defendants are involved in an alleged violation, the Court must take an individualized approach that accounts for the duties, discretion, and means of each defendant. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners because being assaulted in prison "is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 832–34 (1994); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009). To state a failure-to-protect claim, a plaintiff must allege that: (1) the deprivation was, objectively, sufficiently serious, and (2) the official was, subjectively, deliberately indifferent to the prisoner's safety or acted with "a sufficiently culpable state of mind." *Farmer*, 511 US at 834; *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (internal citation omitted).

Under the objective prong, "[w]hat is necessary to show sufficient harm for the purposes of the Cruel and Unusual Punishment Clause depends on the claim at issue." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). For a failure-to-protect claim, the prisoner

must show that he was placed in conditions that posed a substantial risk of serious harm. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Under the subjective prong, the requisite state of mind is "deliberate indifference." *See Farmer*, 511 U.S. at 834. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrs.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002). A plaintiff must allege facts to support that the official knew of and disregarded an excessive risk to prisoner safety. *Farmer*, 511 U.S. at 837. To satisfy the knowledge component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Although deliberate indifference "does not require that the [prison] official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault," it does require that the official "have more than a mere suspicion that the attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted).

In addition, a plaintiff alleging deliberate indifference must "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

Plaintiff's allegations are too vague to state a failure-to-protect claim against any named Defendant. Plaintiff alleges that on March 5, 2024, he submitted a letter regarding the ongoing violence and conditions at Rast Unit. Plaintiff does not specify to whom he submitted the letter, nor does he describe the content of the letter. General awareness of violent conditions at Rast Unit is insufficient to support individual liability. Plaintiff claims

that Defendants and ADCRR administrators "also were aware" that Plaintiff had renounced his prior gang affiliation, which made him a target for violent assaults by other prisoners, but he does not allege *which* Defendants were aware that he had renounced his prior gang affiliation, when they became aware, or which prisoners were likely to target Plaintiff as a result.

The first assault—on October 7, 2024—allegedly occurred seven months after Plaintiff sent the March 5 letter. Plaintiff does not allege that the prisoners who assaulted him on October 7 were, for example, members of his former gang, members of a rival gang, or prisoners whom Plaintiff had ever identified to any named Defendant as posing a specific threat to Plaintiff. Moreover, seven months is too attenuated to support that those Defendants who received the March 5 letter or were aware of Plaintiff's renunciation of his prior gang membership—particularly in the absence of specific facts regarding the content of the letter—and could have reasonably foreseen the October 7 assault.

Likewise, with respect to the October 9, 2024 assault, Plaintiff alleges that at an unspecified time, Defendants Cameron, Gonzales, and Rosales had identified the leader of the prison gang whose members had been targeting and assaulting Plaintiff, and that that prisoner was brought to the IMO, where he assaulted Plaintiff. But Plaintiff does not allege when or how Defendants Cameron, Gonzales, and Rosales identified the prisoner as the leader of the prison gang whose members had been targeting Plaintiff, nor does he allege that those Defendants were responsible for bringing the prisoner to the IMO on October 9. Consequently, Plaintiff's allegations do not support an inference that Defendants Cameron, Gonzales, and Rosales's actions were the actual and proximate cause of the October 9, 2024 assault. Plaintiff asserts that "Defendants" failed to provide adequate supervision and control over the prisoner who was a known gang leader, but he does not specifically allege that any other named Defendant had any knowledge or involvement in the prisoner's gang affiliation, targeting of Plaintiff, or the decision to bring him to the IMO at the same time as Plaintiff.

Additionally, aside from alleging that he was hit over the head while he was in his cell, Plaintiff alleges no specific facts regarding the December 12, 2024 assault. Plaintiff claims that Defendants failed to provide adequate supervision and control over the prisoner who attacked Plaintiff in his cell by placing Plaintiff "in an area of the prison which exposed him to the extreme risks of violent attacks by hostile inmates who are affiliated with gangs and wish to harm or kill Plaintiff because he had renounced his prior gang affiliation." But Plaintiff fails to allege facts to support that the prisoner who assaulted him on December 12 did so because of Plaintiff's prior gang affiliation or that any named Defendant knew that the prisoner who assaulted Plaintiff posed a specific threat to Plaintiff.

Plaintiff generally alleges that Defendants put him at substantial risk of serious harm by returning him to Rast Unit after each assault. Plaintiff fails, however, to allege who made the decision to return him to Rast Unit after each attack. Plaintiff alleges that on October 16, 2024—after the first two assaults—he submitted a complaint to Defendants Lee and Lynch stating, among other things, that he had been assaulted by other prisoners who were members of a prison gang. Plaintiff does not allege whether and when Defendants Lee and Lynch responded to the complaint or whether either Defendant was responsible for returning Plaintiff to Rast Unit.

Plaintiff also alleges that on October 30, 2024, Defendant Mattos wrote "a response" to Plaintiff "acknowledging" that Plaintiff was a "victim of multiple assaults at the Rast Unit" and advising Plaintiff that he would soon be returned to the Rast Unit. Plaintiff fails to provide sufficient detail regarding Defendant Mattos's response to support that Mattos was aware of and disregarded a substantial risk of serious harm to Plaintiff. Plaintiff does not state what Defendant Mattos was responding to, the context in which Mattos allegedly acknowledged that Plaintiff was the victim of multiple assaults at Rast Unit, or describe Mattos's explanation, if any, for why Plaintiff "would soon be returned to the Rast Unit."

Similarly, Plaintiff alleges that in his November 11, 2024 letter to Defendant Thornell, Plaintiff "advised" that Defendant Mattos was aware that Plaintiff had been the victim of assaults and that he still was returned to the same unit. That allegation is too

vague to support that Defendant Mattos disregarded a substantial risk of serious harm to Plaintiff. Plaintiff does not allege when or how Mattos became aware that Plaintiff was the victim of prior assaults or that Mattos made the decision to return Plaintiff to Rast Unit after the October 9, 2024 assault. Plaintiff also does not sufficiently describe the content of the letter to Defendant Thornell to support that Thornell was aware of and disregarded a substantial risk of serious harm to Plaintiff.

Plaintiff refers to a November 5, 2024 grievance and a December 1, 2024 grievance appeal, but he does not sufficiently allege to whom he submitted the grievance and appeal, the content of the grievance or appeal, or the responses he received, if any, to the grievance or appeal.

In short, Plaintiff fails to allege facts to support that *each* named Defendant was aware of and disregarded a substantial of serious harm to Plaintiff and caused Plaintiff's injuries as a result. The Court will therefore dismiss the Complaint for failure to state a claim.

**IV. Leave to Amend**

Within 30 days, Plaintiff may submit a first amended complaint to cure the deficiencies outlined above. Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint." The first amended complaint may not incorporate any part of the original Complaint by reference. Plaintiff may include only one claim per count.

A first amended complaint supersedes the original Complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat the original Complaint as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original Complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a first amended complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

**IT IS ORDERED:**

(1) The Complaint (Doc. 1) is **dismissed** for failure to state a claim. Plaintiff has **30 days** from the date this Order is filed to file a first amended complaint in compliance with this Order.

(2) If Plaintiff fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g) and deny any pending unrelated motions as moot.

Dated this 21st day of October, 2026.

James A. Teilborg
Senior United States District Judge